UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CORY GEORGE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3676** |
| **ENTERGY SERVICES, INC.** | **SECTION "I" (3)** |

**ORDER**

On September 14, 2010, plaintiff's Motion to Compel [Doc. #85] came on for oral hearing by telephone before the undersigned. Present were Dan Scheuermann on behalf of plaintiff Cory George ("plaintiff")[1] and Amelia Koch, Kathlyn Perez and Megan Nash on behalf of defendant Entergy Services, Inc. ("defendant" or "Entergy"). Having reviewed the motion, the memoranda, the case law and the parties' oral argument, the Court rules as follows.

**I.   Background**

Plaintiff is a black, female former employee of defendant. Plaintiff worked in defendant's Human Resources department. In April 2008, plaintiff filed a formal complaint with defendant's ethics line. In the complaint, plaintiff complained of race and sex discrimination and retaliation. After the complaint, plaintiff alleges that she received no work assignments for several days. Later in April, two attorneys interviewed plaintiff regarding her complaint.

---

[1]   Plaintiff Cory George also participated at the oral hearing.

In May 2008, plaintiff alleges that she witnessed racially discriminatory behavior on the part of her supervisor, Diana Harris, during an interview panel. Two days after the interview, plaintiff filed another anonymous ethics line complaint.

Plaintiff alleges that because of her complaints, defendant did not promote her to a temporary "acting manager" position in defendant's human resources division. Plaintiff claims that defendant promoted Kristin Phillips to the position despite the fact that Phillips was on vacation and not present during the interview process.

Plaintiff alleges that defendant ostracized and alienated her during a two-day staff meeting in Jackson, Mississippi. Later, Kay Lane, another Entergy employee, allegedly informed plaintiff that Harris and Bill Marchese had not been complimentary of plaintiff during a manager's meeting. Defendant also allegedly excluded plaintiff from a team-building exercise and then contacted plaintiff after the fact to inform her of the meeting. Plaintiff also claims that defendant excluded her from a meeting at the Gas Operations Department to meet new Vice President Sherri Winslow.

Plaintiff alleges that she suffered continuing and escalating ostracism, alienation and deprivation of developmental opportunities after she filed her ethics-line complaints. Allegedly, the work environment became so intolerable that plaintiff was forced to resign, and plaintiff claims constructive discharge as of January 2009.

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Notice of Right to Sue on March 2, 2009. Plaintiff timely filed this lawsuit May 28, 2009, within 90 days of receipt of the Notice of Right to Sue.

## II.    Law and Analysis

Plaintiff filed this motion to compel, challenging the sufficiency of several of defendant's

responses to her discovery requests. Specifically, plaintiff asks the Court to order defendant to produce the following: (1) the interview notes for job postings 106010, 106163 and 106133; (2) all information on all individuals who applied for, or were interviewed for, position posting 106010; (3) the personnel file, performance evaluations and career plan information for Sandy Lambert; (4) the personnel file, performance evaluations and career plan information for Kristin Phillips; (5) the personnel file of Emily Phipps; (6) the performance evaluations of Diana Harris; and (7) documents related to any and all investigations performed by the law firm of Phelps Dunbar at the request of Entergy.

> **A.** **The interview notes for job postings 106010, 106163 and 106133 and all information on all individuals who applied, or were interviewed, for position posting 106010**

Plaintiff claims that these two sets of documents will support her claim of discrimination because plaintiff is allegedly better qualified than those individuals who applied, or were interviewed, for job posting 106010.[2] Entergy ultimately hired Emily Phipps for job posting 106010. Entergy objected to the discovery requests on the ground that plaintiff was not interviewed for position 106010. Plaintiff argues that the documents are relevant because she applied for the position. Citing case law, plaintiff argues that she need only show that she was rejected for the position, not that she was or was not interviewed. Plaintiff intends to demonstrate that she had superior credentials than those who were interviewed and the one who was hired. Plaintiff argues that this information is relevant because she can show that the selection process was discriminatory by comparing her credentials to those of the other individuals.

Plaintiff claims that she applied for job posting 106010. Based on this allegation, the Court

---

[2] Neither party explains or specifically addresses job postings 106163 and 106133.

finds that the request for the applicant information for those individuals who applied for job posting 106010 is reasonably calculated to the discovery of admissible evidence. Comparative evidence is highly probative and relevant in Title VII suits, in which a plaintiff must ultimately compare herself to other individuals to prove a claim for alleged discrimination. Because plaintiff alleges that she applied for job posting 106010, any evidence of other applicants for job posting 106010 is relevant to a potential comparison with plaintiff.

However, the Court finds that the request for the interview notes for job postings 106010, 106163 and 106133 and the request for the information of those individuals who interviewed for job posting 106010 are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[3] Because plaintiff did not interview for job posting 106010, the Court finds that compliance with the request would produce no evidence to which plaintiff could compare herself, and thus, no evidence relevant to plaintiff's claims.

**B.     The personnel file, performance evaluations and career plan information for Sandy Lambert, the personnel file, performance evaluations and career plan information for Kristin Phillips and the personnel file of Emily Phipps**

Plaintiff argues that Lambert, Phillips and Phipps were similarly-situated employees for purposes of Title VII. All of them allegedly reported to Diana Harris, whom Plaintiff alleges discriminated against her. Plaintiff and Lambert had the same job title, similar job assignments and worked in concert on several projects. Plaintiff and Phillips and Phipps all reported to Harris, had similar work assignments and also worked in concert on several projects.

Plaintiff claims that Lambert received preferential treatment in the form of raises and positive

---

[3]     Of course, the interviewees for job posting 106010 had to apply for the position. Accordingly, some of the information on individuals who interviewed for job posting 106010 is subsumed within this Court's order to produce the information on those individuals who applied for the position.

4

recommendations while plaintiff did not. While defendant notes that plaintiff claims that Lambert is similarly situated to her, defendant argues that plaintiff has never articulated in what way Lambert was treated more favorably except for a pay increase when Lambert was transferred to Human Resources. Lambert allegedly made *significantly less* money than plaintiff even after the transfer. Defendant notes that plaintiff alleges that Lambert received preferential job assignments and "logistics" but fails to define "logistics." Defendant claims that there is information on job assignments of all managers and all human resource representatives in the Client Area and Subject Area Assignments that defendant has *already* produced. While there may be some information on Lambert's job assignments in the file, defendant argues that differential work assignments do not constitute discrimination. *Ellis v. Principi*, 246 Fed. Appx. 867, 870 (5th Cir. 2007). Defendant also notes that when she picked her own assignments, plaintiff by and large picked the assignments to which she had earlier been assigned. And defendant asserts that while plaintiff now argues that Diana Harris gave favorable work recommendations to Lambert, defendant contends that favorable work recommendations do not constitute adverse employment actions in that they are not ultimate employment decisions. Defendant thus argues that plaintiff's failed arguments are no reasons to turn over private and confidential personnel files.

With regard to Phillips, defendant notes that plaintiff alleges that Harris gave Phillips a new computer while plaintiff had to work on obsolete equipment and that Harris gave easier and less work-intensive assignments to Phillips. Defendant has already responded to plaintiff that the IT Department handles the function of allocating computers and their attendant equipment. And, as noted above, defendant contends that differential work assignments are not actionable employment actions. Defendant argues that Phillips was not plaintiff's peer as Phillips had a higher position and

5

thus different duties and responsibilities

As with Lambert and Phillips, plaintiff argues that Phipps was an employee similarly situated to her. As noted above, Entergy hired Phipps for job posting 106010. Phipps' personnel file is allegedly relevant to show that Phipps' qualifications were inferior to those of plaintiff but that Phipps was treated better. Entergy has produced Phipps's resume, applicant information for the job posting and application for employment. That is enough, defendant asserts, to allow plaintiff to try and prove a *prima facie* case of discrimination. Phipps was hired from an outside company, and thus, no personnel record existed when Entergy hired Phipps over promoting Plaintiff.

The leading case in this Circuit regarding discovery of personnel files is *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991). The plaintiffs in *Coughlin* were former deputy sheriffs who claimed that they were improperly discharged for failing to support the sheriff in his reelection bid. Plaintiffs argued that the cited reason for their discharge - violation of department policy against release of information during an ongoing investigation - was a pretext for their dismissal. Plaintiffs sought discovery of personnel files within the department in an effort to show that other employees had committed similar infractions and had not been dismissed. The district court limited discovery of the personnel files to those files that evidenced removal or disclosure of confidential material - misconduct similar to the allegations of the plaintiffs - and to a two-year period.

On appeal, the Fifth Circuit determined that the district court had erred in limiting discovery of personnel files. *Id.* at 1160. The court noted that both the federal rules of discovery and the construction of the term "relevant" are broad. *Id.* at 1159. The court determined that the district court had failed to: (1) properly determine the applicability of any asserted privilege and (2) balance the plaintiffs' need for the files against the government's interest in confidentiality. *Id.* at 1160. The

court remanded the case to the district court with instructions to consider the ten factors in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), to weigh the competing interests of the parties and to determine whether an asserted privilege should bar discovery of the files. *Id.* at 1160.

The discovery disputes in both *Coughlin* and *Frankenhauser* involved records of law enforcement agencies. Here, the personnel files of Lambert, Phillips and Phipps are records maintained by a private employer. Thus, the majority of the *Frankenhauser* factors are inapplicable to the extent they require consideration of governmental interests in the confidentiality of investigations and processes.[4] However, *Coughlin* and its subsequent progeny make clear that in resolving disputes regarding personnel files, the court is required to balance the competing interests of the parties in a considered manner, with regard for the breadth of the federal discovery rules. *See Eckstein Marine Serv., Inc. v. Anglo Am. Ins. Co., Ltd.*, 168 F.R.D. 38, 39-40 (W.D. La. 1996) (analyzing *Coughlin* and allowing discovery of personnel file in vessel-collision suit).

While defendant argues that the three personnel files are irrelevant and should not be produced due to privacy concerns, the Court finds otherwise. After balancing the relevant

---

[4] The ten factors in *Frankenhauser* are as follows: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. 59 F.R.D. at 334.

*Frankenhauser* factors, the Court finds that plaintiff's need for the production of the three personnel files outweighs the concerns of defendant in the privacy of these three employees. Defendant argues that plaintiff fails to point to facts that Lambert, Phillips and Phipps are employees similarly situated to her. But that is a merits-based decision not for this Court. This Court need only review the allegations in the pleadings and determine whether the discovery requested is reasonably calculated to lead to the discovery of admissible evidence. As noted above, discovery in Title VII suits is often heavily factual given the need for evidence to compare the plaintiff to other potentially similarly-situated employees. That plaintiff alleges that Lambert, Phillips and Phipps had similar job duties and responsibilities and often worked in concert with plaintiff is enough to allow plaintiff discovery that may lead to evidence of comparability between plaintiff and the three employees.

The Court notes, however, that plaintiff is not entitled to all of the information in the personnel files. Defendant shall appropriately redact all personal identifying information from the personnel files before production. Further, these three personnel files shall be covered by the protective order entered by this Court. [Doc. #57]. And, should defendant withhold any documents on the ground of any privilege, defendant shall simultaneously produce a privilege log with the production of the personnel files.

### C. The performance evaluations of Diana Harris

Plaintiff argues that the performance evaluations of Harris will reveal whether Entergy made any effort to curb any instances of unfair labor practices by Harris.

Defendant argues that these requests are not reasonably calculated to lead to the discovery of admissible evidence. Defendant ultimately concluded that Harris had done nothing wrong, and defendant has produced all relevant information on this topic. Defendant has produced documents

8

(1) that no other complaints have ever been made against Harris and (2) hundreds of documents on its policies and diversity training. Plaintiff took the deposition of Harris on April 1, 2010. Harris responded to all questions and has cooperated fully in this investigation. Defendant argues that plaintiff wants the file to simply scrutinize Harris.

The Court finds that the request for the performance evaluations of Harris is not reasonably calculated to lead to the discovery of admissible evidence. Defendant has already responded to plaintiff's request: Harris has been the subject of no alleged discriminatory behavior other than that alleged by plaintiff. Production of Harris's performance evaluations would reveal no evidence relevant to plaintiff's claim that Harris discriminated against her.

### D. Documents related to any and all investigations performed by the law firm of Phelps Dunbar at the request of Entergy

Entergy hired Phelps Dunbar in an investigative capacity to assess whether plaintiff's internal claims of discrimination have merit. Plaintiff seeks to obtain information regarding, *inter alia*, how many internal complaints of discrimination have been made, whether an outside investigator was ever necessary and the outcome of the investigations. While plaintiff notes that Entergy has objected on the ground of confidentiality, plaintiff argues that such information would be protected by the protective order in this suit.

Defendant claims that this request is overbroad and irrelevant to plaintiff's suit and unduly burdensome in that plaintiff placed no limit on the subject of the investigations and requests ten years of investigative materials. Entergy has produced more than 1,300 pages of documents that address Phelps Dunbar's investigation of plaintiff's claims. Ms. Susan Furr interviewed ten individuals and spent hundreds of hours investigating plaintiff's claims. Defendant contends that the individuals in any other unrelated investigation deserve the same amount of privacy as plaintiff.

Plaintiff deposed Furr and has discovered all information relevant to the investigation of her claims. Defendant alleges that plaintiff wants the file to demonstrate that Phelps Dunbar always finds that Entergy has done nothing wrong. Entergy argues that the unrelated investigations have nothing to do with such a claim.

The Court finds that this request is not reasonably calculated to lead to the discovery of admissible evidence. Evidence relating to investigations of other alleged discriminatory behavior by Entergy is simply irrelevant to plaintiff's claims. Plaintiff alleges no pattern or practice of discrimination here. She alleges only that Entergy discriminated and retaliated against her. Evidence of other investigations into alleged violations of Title VII will reveal no evidence relevant to any claim here. Plaintiff has all of the discovery as it relates to the investigation of her claims of discrimination and retaliation.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that plaintiff's Motion to Compel [Doc. #85] is GRANTED IN PART as outlined above. Defendant shall comply **no later than fourteen (14) days** from the date of this Order.

New Orleans, Louisiana, this 17th day of September, 2010.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**