**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CORY GEORGE**                                                    **CIVIL ACTION**

**VERSUS**                                                              **No. 09-3676**

**ENTERGY SERVICES, INC.**                              **SECTION "I" (3)**

<u>**ORDER AND REASONS**</u>

Before the Court is a motion for summary judgment filed by defendant, Entergy Services, Inc., ("Entergy").  Plaintiff, Cory George ("George"), has filed a response.  For the following reasons, Entergy's motion for summary judgment is **GRANTED.**

*BACKGROUND*

George, an African-American female, worked for Entergy as a human resources representative from November 11, 2002 until she left Entergy on January 4, 2009.[1]  On January 5, 2009, George began working for HydroChem Industrial Services in a position she accepted on November 21, 2008.[2]

On April 13, 2008, George filed a formal complaint with Entergy's ethics line complaining of a sexually hostile work environment, race discrimination, sex discrimination, and retaliation.[3]  During the rest of her tenure at Entergy, George claims that she was intentionally ostracized, treated differently than similarly situated co-workers, not hired for two open positions and not interviewed for one of the positions, excluded from important meetings, and deprived of professional developmental opportunities.[4]

On May 28, 2009, George filed this lawsuit against Entergy claiming: (1) race discrimination in violation of Title VII and 42 U.S.C. § 1981; (2) sex discrimination and a

---

[1] R. Doc. No. 1, pgs.2, 5.
[2] R. Doc. No. 98, p.2
[3] R. Doc. No. 1, pgs. 2-3.
[4] R. Doc. No. 1, pgs. 3-5.

1

sexually hostile work environment in violation of Title VII and 42 U.S.C. § 1981; (3) retaliation; (4) intentional infliction of emotional distress; and, (5) entitlement to punitive damages.[5]  George also alleges that she was constructively discharged.

In its summary judgment motion, Entergy first asserts that George has failed to establish a prima facie case of race discrimination.  Second, Entergy contends that George has failed to establish a prima facie case of retaliation.  Third, Entergy maintains that George has failed to establish a prima facie case of either sex discrimination and/or a sexually hostile work environment.  Fourth, Entergy argues that George has failed to proffer sufficient evidence of intentional infliction of emotional distress.  Fifth, Entergy asserts that George has failed to put forward sufficient evidence that would warrant the imposition of punitive damages against Entergy.  Sixth, Entergy first argues that George has failed to proffer sufficient evidence upon which a reasonable jury could conclude that George was constructively discharged.

In her response to Entergy's motion, George responds that she was constructively discharged, that she was discriminated against based on her race, and that she was subject to retaliation based on her statutorily protected activity.  George does not address Entergy's arguments with respect to sex discrimination and/or a sexually hostile work environment, intentional infliction of emotional distress, or punitive damages.

## LAW AND ANALYSIS

### Summary Judgment

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. FED.R.CIV.P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of

---

[5] Rec. Doc. No. 1.

the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex,* 477 U.S. at 323; *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof.  *Schaefer v. Gulf Coast Regional Blood Center,* 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted); *see also Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994); *Lujan v. Nat'l. Wildlife Fed'n.,* 497 U.S. 871, 871-73, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir.1992). Moreover, "conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving

party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id* . at 255; *see Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).

### Race Discrimination

"Although summary judgment is not favored in claims of employment discrimination, it is nonetheless proper when there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 190-91 (5th Cir. 2001) (internal quotation marks omitted). Summary judgment in employment discrimination cases is proper when the plaintiff fails to establish a prima facie case of discrimination. *Lyles v. Texas Alcohol Beverage Com'n*, No. 09-20714, 2010 WL 2103006, at *3 (5th Cir. May 24, 2010). If the plaintiff relies on circumstantial evidence, as George does, the burden-shifting test outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) applies.

Following *McDonnell Douglas*, if the plaintiff succeeds in establishing her prima facie case, the employer must then provide a legitimate and non-discriminatory reason for the underlying action. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Should the employer succeed in providing a legitimate and non-discriminatory reason for its action(s), the plaintiff must then show that the employer's articulated reason is pretextual. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment. *Id.* at 345 (*quoting Reeves v.*

4

*Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146-48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

In order to establish a prima facie case of race discrimination, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the job, (3) she was subjected to an adverse employment action, and (4) she was treated less favorably than similarly situated individuals of another race or replaced by an individual of a different race. *Bryan v. McKinsey & Co.,* 375 F.3d 358, 360 (5th Cir. 2004).

The parties agree that George, as an African American, is a member of a protected class. The parties also agree that George was qualified for her position as a human resources specialist at Entergy. Accordingly, the first two elements of George's prima facie case of race discrimination are satisfied.

George must also show that she was subjected to an adverse employment action. "An adverse employment action consists of *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating." *Knatt v. Hosp. Svc. Dist.*, 327 Fed. App'x 472, 484 (5th Cir. 2009) (citing *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir.2004)). As the Fifth Circuit has explained, "an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Pegram*, 361 F.3d at 282 (internal quotation marks and citations omitted).

Although George's complaint and response lack some specificity with respect to what she believes constitutes adverse employment actions on Entergy's part, her submissions to the Court indicate that there are three categories of actions that might be construed as such. The Court will address each of these alleged actions in turn.

### i.    Less Favorable Treatment and Minor Workplace Grievances

George appears to assert that Entergy subjected her to an adverse employment action when George's supervisors treated her less favorably than her co-workers on a number of occasions.  For example, George alleges that: (1) she had "substandard [computer] equipment" while Entergy issued one of her co-workers "a new laptop"[6]; (2) she was treated differently "in that [her supervisor] gave [two of her co-workers] better work assignments"[7];  (3) that her supervisor gave one of her co-workers "less work, easier assignments . . . [and the co-worker] was able to make mistakes and basically not have anyone say anything about it" while if George made a mistake "it was blown out of proportion"[8]; (5) that one of George's co-workers "very rarely showed, if ever [in the office] . . . and if she did show, she was not there for the whole day, whereas [George] was required to stay for the whole day"[9]; and, finally, (6) that they just "liked [her co-worker] more."[10]  George also alleges that she experienced adverse treatment because her boss was rude and aggressive towards her, someone rummaged through her office and desk leaving it disheveled, she was not asked to serve as "acting manager" for her department over the course of a Memorial Day weekend while the department's official manager was on vacation, and her boss did not always give her all of the information she needed in order to feel like she had "successfully completed" her assignments.[11]

Pursuant to Fifth Circuit precedent, relatively minor work place grievances such as those asserted by George do not amount to adverse employment actions.  *See Ellis v. Principi,* 246 F. App'x 867, 870 (5th Cir. 2009) (less favorable work assignments do not constitute an ultimate

---

[6] R. Doc. No. 98-2, pg. 14.
[7] Id. at 15.
[8] Id.
[9] Id. at 14.
[10] Id. at 15.
[11] See generally R. Doc. No. 98-2, pgs. 29-39.

employment decision); *Webb v. Cardiothoracic Surgery Assocs. of N. Tex.,* 139 F.3d 532, 540

(5th Cir.1998) (rude treatment by employer does not constitute an ultimate employment

decision); *Messer v. Meno,* 130 F.3d 130, 140 (5th Cir. 1997) (monitoring of employee's

conversations, criticism of work and conduct, and refusal to consider employee's input in

business decisions did not constitute an ultimate employment decision); *Dollis v. Rubin,* 77 F.3d

777, 781-82 (5th Cir. 1997) ("Title VII was designed to address ultimate employment decisions,

not to address every decision made by employers that arguably might have some tangential effect

upon those ultimate decisions.").  Accordingly, George has not established the third element of

her prima facie case of race discrimination.

### ii.        Constructive Discharge

Further, although George does not explicitly state that she believes that her alleged

constructive discharge constitutes an adverse employment action, the Court notes that a

constructive discharge can satisfy the adverse employment action element of a prima facie case

of discrimination.  *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 678 (7th Cir. 2010) ("A

constructive discharge constitutes an adverse employment action.").[12]  In order to establish a

constructive discharge, an employee "must offer evidence that the employer made the

employee's working conditions so intolerable that a reasonable employee would feel compelled

to resign."  *Brown v. Bunge Corp.,* 207 F.3d 776, 782 (5th Cir. 2000).  The Fifth Circuit refers to

---

[12] The concept of constructive discharge is important for at least two analytically distinct reasons.  First, as here, courts use a constructive discharge analysis to determine whether a plaintiff meets the adverse employment action element of a *prima facie* case of discrimination under the *McDonnell Douglas* burden shifting framework. *See e.g., Rowell v. BellSouth Corp.,* 433 F.3d 794, 806-07 (11th Cir.2005) ("[W]e find that [plaintiff] cannot establish an adverse employment action of constructive discharge and his ADEA claim fails" because plaintiff has not established a *prima facie* case of employment discrimination.).  In such a situation, a constructive discharge is not seen as an independent claim, but merely an element of the *prima facie* case of discrimination under the *McDonnell Douglas* framework.

Second, in the case of hostile work environment claims attributable to harassment by a supervisor, the Fifth Circuit explained in *Aryain v. Wal-Mart Stores Texas LP,* 534 F.3d 473  (5th Cir. 2008), that establishing "constructive discharge entitles an employee who resigned to recover 'all damages available for formal discharge.'" *Aryain,* 534 F.3d at 480 (quoting *Penn. State Police v. Suders,* 542 U.S. 129, 147 n. 8 (2004)).

this as the reasonable employee test.  *See Haley v. Alliance Compressor LLC,* 391 F.3d 644, 650 (5th Cir. 2004).  The evidence "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Landgraf v. USI Film Prods.,* 968 F.2d 427, 430 (5th Cir. 1992) (citation omitted); s*ee also Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir. 2001) ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim.").  Courts take into consideration the following when determining whether a reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer [sic] were accepted or not.

*Aryain v. Wal-Mart Stores Tex. LP,* 534 F.3d 473, 481 (5th Cir. 2008).

Of the six factors that the Fifth Circuit considers when determining whether an employee has been constructively discharged, George alleges that Entergy "began to constantly place [her] in humiliating situations" and "reduced her job responsibilities."[13]  George does not allege or offer any evidence that she was demoted, that her salary was reduced, or that she received early offers of retirement.[14]  George's deposition does reveal that she believes that she was given "demeaning" and "secretarial" work assignments.[15]  Yet, when asked to describe one such assignment, she described a substantial assignment that required travel and meeting and

---

[13] R. Doc. No. 98, pg. 18.
[14] The Court notes that, relying on *Brown v. Bunge Corp.*, 207 F.3d 776 (5th Cir. 2000), George asserts that one of the factors the Court should consider is that she was "subjected to terms less favorable than the employee's former status."  R. Doc. No. 98, pg. 18 (internal quotation marks and citation omitted).  In *Brown*, the Fifth Circuit modified the offer of early retirement factor when it stated that courts could consider, "*offers* of early retirement [or continued employment on terms less favorable than the employee's former status] . . . ."  *Id.* at 782 (brackets in original) (emphasis added).  George does not allege or produce any evidence that Entergy *offered* to continue her employment only if she continued on terms less favorable than her former status.
[15] R. Doc. No 98-2, pgs. 35-43.

interacting with company officials.[16]  George's complaint with respect to such assignment appears to be that she was "humiliat[ed]" because she was not given sufficient information to adequately perform the task at hand.[17]  On this record, four of the Fifth Circuit's constructive discharge factors do not militate in favor of finding that George has produced sufficient evidence that she was constructively discharged.

The evidence George offers to argue that she was constructively discharged is substantially similar to that produced by the plaintiff in *Stover v. Hattiesburg Public School Dist.*, 549 F.3d 985 (5th Cir. 2008), in which the Fifth Circuit affirmed the district court after it granted summary judgment on the plaintiff's constructive discharge claim.  For example, in *Stover*, the plaintiff proffered the following evidence in an attempt to establish a claim for constructive discharge:  (1) she was not paid appropriately; (2) she was not provided the same opportunities for career development as her co-workers; (3) her complaints of race discrimination were not investigated; (4) she was not allowed to accrue comp time while her co-workers were given such allowance,; (5) her supervisor "exhibited anger, violence, shouting, and waved his arms at [her]"; and (6) she was "excluded from prestigious retreats" and meetings. *Stover*, 549 F.3d at 991-92.  The Fifth Circuit, affirming summary judgment, held that as a matter of law, "[t]he evidence that [plaintiff cited] in support of her constructive discharge claim [did] not amount to conditions or an environment so intolerable that a reasonable employee would feel compelled to resign."  *Id.* at 992.  Further, the court stated that, "[e]ven assuming *arguendo* that Stover was subjected to a hostile working environment, none of the evidence increases the severity or pervasiveness of any harassment to the level required to support a constructive discharge claim."  *Id.*

---

[16] See <u>id.</u>
[17] See <u>id.</u>

Just as the plaintiff in *Stover*, George simply offers evidence that she does not believe that Entergy sufficiently investigated her employment discrimination claims,[18] that she was not given the same opportunities as other workers,[19] that she was not as well liked as some of her co-workers,[20] and that she was intimidated and threatened with aggressive behavior by her supervisor.[21]   Even though George did state during her deposition that, "she stopped getting work assignments"[22] the record does not indicate that the amount of work she acknowledges receiving was so slight that a reasonable employee would have felt compelled to resign.  *See Brown*, 207 F.3d at 782-83 (affirming grant of summary judgment with respect to constructive discharge claim even where employee was demoted and given fewer job responsibilities).  Indeed, one of George's chief complaints in this lawsuit is that she was required to work more than her co-workers. [23]  Because the Fifth Circuit determined in *Stover* that evidence substantially similar to that produced by George fails to establish that she was constructive discharged, the Court concludes that George was not constructively discharged.

### iii.      Failure to Receive Promotions

Additionally, the parties' submissions to the Court reveal two instances in which George was allegedly passed over for a promotion.  George alleges that her boss, Diana Harris ("Harris"), refused to interview and promote her for a senior human resources representative within her department.[24]  George also alleges that Darren Nunez ("Nunez") failed to hire her for a position in his department.[25]

---

[18] R Doc. No. 98-2, pgs. 20-21.
[19] Id. at 14-15.
[20] Id.
[21] R. Doc. No. 98-2, pgs. 29 & 58-60.
[22] R. Doc. No. 98-2, pg. 22.
[23] Id.
[24] Rec. Doc. No. 98, pgs. 11-13.
[25] Id. at 16-17.

For purposes of argument, the Court will conclude that the failure to promote was an adverse employment action and that the fourth *Bryan* element was satisfied. The burden then shifts to Entergy to establish a legitimate and non-discriminatory business reason for not promoting or hiring George.

With respect to the senior human resources representative position, Entergy has produced the deposition testimony of Harris, George's boss, in which Harris asserts that she did not promote George because George was lacking in the areas of "initiative, quality of work, planning and organizing, and taking leadership roles."[26] The Court finds such reason sufficiently specific to constitute a legitimate, non-discriminatory reason. Having produced a legitimate, non-discriminatory business reason for failing to promote George to the senior position, the burden shifts back to George to rebut Entergy's reason by producing evidence that such reason is pretextual. George cites *Patrick v Ridge*, 394 F. 3d 311, 316 (5th Cir. 2004) to argue that Harris' criticisms of George during her employment with Entergy were never based on "specific example[s]."[27] George cites only to the affidavit Brenda Horton ("Horton"), one of George's co-workers at Entergy, which states that, "Harris' assessment of Cory George was not fact based supported [sic] with concrete examples."[28]

As the Fifth Circuit has stated, "[e]ven if [the Court] were to conclude that some of the evidence is probative of pretext, the connection is not strong enough to overcome the 'same-actor inference.'" *Morrison v. Weyerhaeuser Co.*, 119 Fed. App'x 581, 586 (5th Cir. 2004) (citing *Brown v. CSC Logic, Inc.,* 82 F.3d 651 (5th Cir. 1996)). The same actor inference applies when the person who hired the plaintiff failed to promote the plaintiff. *See, e.g.*, *Evans v.*

---

[26] R. Doc. No. 77-8, pg. 37. The parties' briefs do not indicate the race of the person who received such promotion if, in fact, such promotion was awarded.
[27] R. Doc. No. 98, pg. 8.
[28] R. Doc. No. 98-4, pg. 5.

*Technologies Applications & Service Co.,* 80 F.3d 954, 959 (4th Cir. 1996) ("[B]ecause

Houseman is the same person who hired Evans, there is a powerful inference that the failure to

promote her was not motivated by discriminatory animus."); *see also Morrison*, 119 Fed. App'x

at 586.

　　　Because the parties do not dispute that Harris hired George, Harris is entitled to the same

actor inference.  Further, the Court finds that George's evidence with respect to pretext is

tenuous is best.  Horton's sworn statement that Harris's assessment of George at a December

2007 meeting "was not fact based supported [sic] with concrete examples" does little to call into

question the fact that Harris has provided sufficiently specific reasons for her decision not to

promote George after George engaged in protected activity in April 2008.  As such, George's

tenuous evidence of pretext does not overcome Entergy's legitimate, non-discriminatory

reason.[29]  *See id.* ("At best, the evidence raises a tenuous inference of pretext, which is

insufficient to survive summary judgment in most cases where an employer has proffered a

legitimate, non-discriminatory reason for the adverse employment decision, *and particularly so

where the same-actor inference comes into play*.") (emphasis added).

　　　With respect to Entergy's failure to hire George for a position in Nunez's department,

Nunez states in an affidavit that neither race nor gender played any role in his decision not to hire

George.[30] Further, Nunez states in his affidavit that he first offered the position to an African-

American female, Angela Johnson ("Johnson"), and then offered the position to another African-

American female, Theresa Gray ("Gray"), after Johnson declined the position.[31]  Nunez further

---

[29] George does not address Entergy's assertion of the same actor inference.
[30] R. Doc. No. 25.
[31] R. Doc. No. 25.

states that he did not offer the position to George because both Johnson and Gray were more experienced and qualified than George.[32]

Having established a legitimate, non-discriminatory reason, the burden shifts back to George to rebut Entergy by showing that such reason is pretextual.  George fails to offer any argument or authority with respect to pretext and the Court's independent review of the record uncovers no evidence that Nunez's proffered reasons are pretextual.

### Retaliation

In order to establish a prima facie case of retaliation, "a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart,* 586 F.3d at 331.  A Title VII retaliation case is also subject to the burden-shifting framework set forth in *McDonnell Douglas.  LeMaire v. Louisiana Dept. of Transp. & Dev.*, 480 F.3d 383, 393 (5th Cir 2007).

First, an employee has engaged in protected activity if she has either "(1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Haynes v. Pennzoil Co.,* 207 F.3d 296, 299 (5th Cir.2000) (quoting 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted).  The parties do not dispute that George engaged in protected activity.  Accordingly, the first element of plaintiff's prima facie retaliation case is satisfied.

Second, George must demonstrate that Entergy took an "adverse employment action" against her. *Aryain,* 534 F.3d at 484. In the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged employment action "materially adverse."

---

[32] Id.

13

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006). An employment action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations and internal quotation marks omitted). An employment action is not materially adverse if it amounts only to "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

In *Stewart v. Mississippi Transportation Commission*, 586 F.3d 321 (5th Cir. 2009), the plaintiff asserted that the following retaliatory actions were taken against her: personal items were taken from her desk; the locks on her office were changed and she was not allowed to close her office door; and she was chastised by superiors and ostracized by co-workers. *Stewart*, 586 F.3d at 331-32. As the Fifth Circuit stated, such actions "do not rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct." *Id*.

Similar to the plaintiff in *Stewart*, George alleges that after she engaged in protected activity she experienced retaliatory conduct because Harris was rude and aggressive towards her, someone rummaged through her office and desk leaving it disheveled, she was not asked to serve as "acting manager" for her department over the course of a Memorial Day weekend while the department's official manager was on vacation, and Harris did not always give her all the information she needed to feel like she had "successfully completed" her assignments.[33] The Court concludes that such allegations are indicative of the petty slights or minor annoyances that often take place at work and that all employees can expect to experience at work. Such allegations do not rise to the level of material adversity. *See id*.

George also asserts that after she engaged in protected activity she experienced retaliatory

---

[33] See generally R. Doc. No. 98-2, pgs. 29-39.

conduct when one of her supervisors, Bill Marchese ("Marchese"), failed to ask company officials whether George could participate in a lunch meeting that he had been invited to attend. Additionally, George asserts that she experienced retaliatory conduct when Marchese did not invite her to attend two meetings – one held in New Orleans and the other held in Baton Rouge – hosted by the newly promoted vice president of Entergy's gas operations.

As the Supreme Court determined in *Burlington Northern*, "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight.  But to retaliate by excluding an employee from a *weekly training lunch* that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."  *Burlington Northern*, 548 U.S. at 69 (emphasis added).  First, as George acknowledges, George presents no evidence that Marchese had the power to invite George to the three meetings described above.  Second, assuming Marchese did have the power to invite George to those three such meetings, his failure to invite George to three meetings is more similar to "[a] supervisor's refusal to invite an employee to lunch" than exclusion from a "weekly training lunch that contributes significantly to the employee's professional advancement."  *Id*.  Pursuant to Supreme Court precedent, the former is "trivial, a nonactionable petty slight," while the latter would likely constitute actionable retaliation.  *Id*.  Accordingly, the Court concludes that the mere fact that George alleges that she was not invited to three meetings does not satisfy the adverse employment action prong of her prima facie case of retaliation.[34]

Finally, even if the Court was to conclude that George's failure to receive the two promotions addressed above in connection with her race discrimination claim constitute adverse employment actions for purposes of her prima facie case of retaliation *and* that there is a causal

---

[34] To the extent that George asserts that Marchese's alleged failure to invite her to the three meetings constitutes an adverse employment actions for purposes of her prima facie case of race discrimination, the Court concludes, for the reasons stated above, that it does not.

connection[35] between the protected activity and such adverse actions, Entergy, as stated above, has produced legitimate non-discriminatory reasons for taking such adverse actions.  Because George has failed to demonstrate that such reasons are pretextual, George cannot establish a prima facie case of retaliation.

### *Sex Discrimination/Sexually Hostile Work Environment*[36]

To establish a hostile work environment claim plaintiff must demonstrate that: she is a member of a protected group; (2) she was the victim of uninvited harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.  *Harvill v. Westward Communications, L.L.C.,* 433 F.3d 428, 434 (5th Cir. 2005).

George proffers no argument or evidence which would lead to the conclusion that Entergy subjected her to a sexually hostile work environment or that she experienced any sex-based discrimination "involving patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiff's work environment." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999).  Although Entergy, as

---

[35] With respect to the Nunez promotion, the Court concludes that there is no genuine issue of material fact with respect to whether there is a causal connection between George's protected activity and such alleged adverse employment action.  The Fifth Circuit has determined that there is no causal connection if the person who denied the employee the promotion was not aware of the employee's protected activity.  *Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (". . . [I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity.")

According to Nunez's affidavit, he was unaware that George had engaged in protected activity when he decided not to hire George.  R. Doc. No. 77-12.  George has presented no admissible summary judgment evidence raising a genuine issue of material fact with respect to whether Nunez did, in fact, know that George had engaged in any protected activity before he decided not to hire her.

[36] George fails to address Entergy's arguments with respect to sex discrimination and/or a sexually hostile work environment.  To the extent that George is alleging discrimination based on sex, such claim fails because, as noted above, George has not established that Entergy's non-discriminatory, reasons for its adverse employment actions are pretextual.

opposed to George, notes that George's ethics line complaint alleged that four sexually charged comments were made to her in the years 2004, 2005, 2006, and 2007, evidence of such isolated comments would not carry George's sex discrimination claim.[37] "Offhand comments and isolated incidents (unless *extremely* serious) [do] not amount to discriminatory changes in terms and conditions of employment." *Id.*  Accordingly, George's sex discrimination and/or sexually hostile work environment claim must be dismissed.

### Intentional Infliction of Emotional Distress[38]

As the Supreme Court of Louisiana has stated,

> [I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1022 (La. 2001) (*quoting White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991)).  Further, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions" and liability only arises when the conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *White*, 585 So. 2d at 1209.

George fails to allege or produce any conduct or action on the part of any employee of Entergy that falls within the bounds of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *See id.* at 1209.  Accordingly, George's intentional infliction of emotional distress claim must be dismissed.

### Punitive Damages[39]

---

[37] R. Doc. No. 77-1, pgs. 25-26.

[38] George fails to address Entergy's arguments with respect to intentional infliction of emotional distress.

To recover punitive damages under 42 U.S.C. § 1981a(b)(1), a plaintiff must demonstrate that her employer engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of the employee. *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 534 (1999). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535. As George fails to allege or produce any evidence of malice or reckless indifference on the part of Entergy toward her federally protected rights, George's attempt to recover punitive damages must be denied.

### CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** and that all of plaintiff's claims against defendant are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, February 25th, 2011.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[39] George fails to address Entergy's arguments with respect to punitive damages.

18